# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WANDA SINGLETON, <br><br> v. <br><br> JAS AUTOMOTIVE LLC d/b/a KIA OF COATESVILLE, THOMAS IANNICELLI, and VALLEY NATIONAL BANK | CIVIL ACTION <br><br> NO. 16-5232 |

**MEMORANDUM RE: MOTION TO VACATE ENTRY OF DEFAULT JUDGMENT**

Baylson, J.                                                                                                  January 14, 2019

## I.  Introduction

Plaintiff Wanda Singleton filed this action against Defendants JAS Automotive LLC ("JAS"), a car dealer and Plaintiff's former employer; Thomas Iannicelli, an agent of JAS; and Valley National Bank ("VNB" or "Defendant"), which extended credit to Plaintiff to purchase a Cadillac and Kia Sorento ("Sorento"). The First Amended Complaint[1] sets out the following Counts against Defendants:

1. **Count I**: Violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq., against all Defendants;

2. **Count II**: Violations of the Motor Vehicle Sales Finance Act ("MVSFA"), 69 Pa.C.S.A. § 601 et seq., and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa.C.S.A. § 201-1 et seq., against all Defendants;

3. **Count III**: Violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638 et seq., against all Defendants;

4. **Count IV**: Fraud against all Defendants;

5. **Count V**: Intentional misrepresentation against Defendants JAS and Iannicelli;

---

[1] The First Amended Complaint is entitled "Second Amended Complaint." (ECF 16, "Compl.") However, this is the only Amended Complaint on the docket.

1

6. **Count VI**[2]: Breach of contract against Defendants JAS and Iannicelli; and

7. **Count VII**[3]: Violation of the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1601 et seq., against all Defendants.

On September 18, 2018, this Court entered default judgment against Defendant VNB (ECF 32). Presently before the Court is VNB's Motion to Vacate Default Judgment (ECF 35, "Mot."). For the reasons discussed below, the Motion to Vacate will be granted.

## II. Factual Background

Plaintiff alleges that, in or about October 2011, Plaintiff was interested in purchasing a car from JAS, for whom Plaintiff had been employed for less than six months. (Compl. ¶¶ 8–10.) On or about October 6, 2011, at the direction, advice, and encouragement of JAS's employees, Plaintiff purchased a 2008 Cadillac DTS. (Id. ¶ 12.) On the same date, at the direction, advice, and encouragement of JAS, Plaintiff also purchased a 2012 Sorento. (Id. ¶ 13.) When Plaintiff purchased both vehicles, Tom Seltzer, JAS's finance manager, completed an "Applicant's Credit Statement" ("Credit Statement") for Plaintiff. (Id. ¶¶ 18, 19.) The Credit Statement indicated that Plaintiff was a retired individual collecting Social Security and a pension, had earned a monthly salary of $2,500 for five years, and made $500 per month as a driver for JAS. (Id. ¶ 19.) The Credit Statement also stated that Plaintiff had a mortgage and other financial obligations. (Id. ¶ 33.) Plaintiff alleges that she informed JAS that she earned approximately $1,100 per month, consisting of less than $500 from JAS and $750 in Social Security. (Id. at ¶¶ 19–20.) According to Plaintiff, Seltzer did not show her the first page of the Credit Statement, so Plaintiff signed the signature page of the Credit Statement without realizing what she was signing. (Id.)

---

[2] The Complaint identifies the breach of contract claim as "Count VII" without including a Count VI. Therefore, the Court refers to Plaintiff's breach of contract claim as "Count VI."
[3] The Complaint refers to the Consumer Credit Protection Act claim as "Count VIII." However, the Court identifies this claim as "Count VII" so that the Counts are sequential.

2

VNB alleges that it was not involved in compiling or obtaining the information contained in the Credit Statement, and that VNB generally does not independently verify the information in a loan application provided by a customer through a dealer, like JAS. (Mot. at 4.) Based on the Credit Statement, VNB extended Plaintiff $68,000 in credit to purchase both vehicles on the same day. (Compl. ¶ 21.)

Valley made two loans to Plaintiff. (Mot. at 3.) The first was a $39,922.10 loan, which Plaintiff used to purchase the Sorento. (Id.) According to the Installment Sale Contract for the loan, Plaintiff traded in a Hyundai Sonata, which had a lien attached to it, for the Sorento. (Id.; ECF 35-13, Sparkes Decl. Ex. A.) The second was a $22,494.55 loan, which Plaintiff used to purchase the Cadillac. (Mot. at 3.) The Installment Sale Contract for the Cadillac loan states that Plaintiff traded in a Ford Mustang for the Cadillac. (Id.; Sparkes Decl. Ex. B.) The Ford Mustang also had a lien attached to it that had to be paid off. (Mot. at 3; Sparkes Decl. Ex. B.) VNB assigned both loans to its wholly-owned subsidiary, VNB Loan Servicing, Inc. ("LSI"). (Id.)

Plaintiff's car payments increased from approximately $804 per month to $983 per month when she traded in the two cars for the Sorento and Cadillac. (Id.; ECF 35-17, Kolansky Decl. Ex. A, Singleton Dep. Tr. at 53:10–54:16.) When Plaintiff returned home with both vehicles, she realized that she could not afford them and did not want them, so she returned to JAS less than twenty-four-hours after signing the paperwork to return them. (Compl. ¶¶ 23–24.) JAS refused to rescind the transactions because the paperwork had been put through. (Id. ¶ 25.)

In December 2011, Plaintiff contacted VNB to surrender the Sorento because she could not afford the car after her Social Security benefits were cut. (Mot. at 5; ECF 35-4, Gonzalez Decl. ¶ 6.) VNB alleges that during a December 14, 2011 phone call between Plaintiff and VNB, Plaintiff stated that she wanted to keep the Cadillac. (Mot. at 5; Gonzalez Decl. ¶ 7.) Plaintiff

continued to drive and make payments on the Cadillac for the next 3.5 years. (Mot. at 5.) In 2015, Plaintiff defaulted on the Cadillac after the engine seized. (Id. at 5–6.)

**III. Procedural History**

LSI sold both cars but did not recover sufficient funds to satisfy the loans. (Id.) As a result, LSI sued Plaintiff for the Sorento deficiency, and judgment was entered against Plaintiff in the amount of $8,092.34 on April 13, 2015. (Gonzalez Decl. Ex. C; Compl. ¶¶ 34–36.) LSI also sued Plaintiff for the Cadillac deficiency and obtained a judgment of $9,716.95 on March 24, 2017. (Mot. at 6; Gonzalez Decl. Ex. D.) Both judgments were entered in the Court of Common Pleas of Chester County, Pennsylvania, and VNB has initiated collection efforts. (Compl. ¶ 37; Gonzalez Decl. Exs. B, D.)

Plaintiff filed the original Complaint in this Court on October 3, 2016 against Defendants JAS and Iannicelli (ECF 1). Defendants filed an Answer on December 30, 2016 (ECF 6). Plaintiff moved for leave to join VNB as a Defendant on May 23, 2017 (ECF 14), which the Court granted on July 24, 2017 (ECF 15). Plaintiff filed the First Amended Complaint ("Complaint") against JAS, Iannicelli, and VNB on September 12, 2017 (ECF 16), and JAS filed an Answer on November 10, 2017 (ECF 17). VNB received the Complaint both by mail on or around September 25, 2017, and by hand on or around November 6, 2017. (Mot at 7.) Upon receiving the Complaint, VNB determined that the action involved LSI and sent the copies to Jaennine Gonzalez at LSI, who works with LSI's outside counsel, with the understanding that LSI would defend the action. (Id.) However, Ms. Gonzalez does not recall receiving any documents in connection with this lawsuit. (Id. at 8.)

On January 9, 2018, Plaintiff filed a request for entry of default of judgment against VNB pursuant to Federal Rules of Civil Procedure 55(a) and (b)(1) in the amount of $85,851.31 (ECF

4

19, "Pl.'s Request"). On January 22, 2018, the Court held a hearing pertaining to case management and default judgment (ECF 23). VNB alleges that it did not receive notice of the hearing until January 23, 2018. (Mot. at 7–8; ECF 35-9, Pertucci Decl. Ex. B.) The action was dismissed with prejudice as to JAS on March 19, 2018 and as to Iannicelli on April 13, 2018 pursuant to agreement of counsel under Local Rule of Civil Procedure 41.1(b) (ECF 27, 28). On August 10, 2018, VNB received notice of a September 18, 2018 hearing regarding Plaintiff's request for default judgment. (Mot. at 8; Pertucci Decl. Ex. C; ECF 33.)

On September 18, 2018, default was entered against VNB in the amount of $104,477.60, and the case was closed (ECF 32). VNB filed a Motion to Vacate Default Judgment and to allow VNB twenty days to file a response to the Complaint on October 12, 2018 (ECF 35). Plaintiff filed a Response on October 26, 2018 (ECF 36, "Resp."), and VNB filed a Reply on November 2, 2018 (ECF 37, "Rep.").

**IV.     Legal Standard**

Federal Rule of Civil Procedure 55(c) provides that "for good cause shown the court may set aside an entry of default and, if a judgment has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b)(1) permits a court to set aside default judgment if there was "mistake, inadvertence, surprise, or excusable neglect" on a defendant's part. Fed. R. Civ. P. 60(b)(1). Rule 60(b)(6) provides a "catchall" for vacating a default judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

When deciding whether to vacate a default judgment, a district must consider four factors: "(1) whether lifting the denial would prejudice the plaintiff; (2) whether the defendant has a prima facie meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions." Emcasco Ins. Co. v. Sambrick, 734 F.2d 71, 73

5

(3d Cir. 1987); Romano v. Westgate Resorts Ltd., No. 16-02714, 2017 WL 3048968, at *3 (E.D. Pa. July 18, 2017) (Baylson, J.) (citation omitted).

In contrast, under Rule 60(b)(4), a rule "wholly distinct" from Rules 60(b)(1) and 60(b)(6), a court may vacate a default judgment if "the judgment is void." Fed. R. Civ. P. 60(b)(4); Arpaio v. Dupre, 527 F. App'x 108, 111 (3d Cir. 2013) (distinguishing Rule 60(b)(4) from Rule 60(b)(1)). A default judgment is "void," for example, if the judgment "impermissibly grants relief beyond the pleadings" in violation of Rule 54(c). 10 FERN M. SMITH, MOORE'S FEDERAL PRACTICE ¶ 54.71 (2018); Marks & Sokolov, LLC v. Mireskandari, No. 13-3152, 2015 WL 1133788, at *2 (E.D. Pa. Mar. 11, 2015) (Schmehl, J.), aff'd sub nom. Marks Law Offices, LLC v. Mireskandari, 704 F. App'x 171 (3d Cir. 2017) (modifying default judgment under Rule 60(b)(4) where the award of attorney's fees and costs, which were not sought in the complaint, violated Rule 54(c)).

The Court has broad discretion to decide whether to set aside a default judgment under Rule 60(b). Romano, 2017 WL 3048968, at *3 (citing Momah v. Albert Einstein Med. Ctr., 161 F.R.D. 304, 307 (E.D. Pa. 1995) (Joyner, J.)); see also Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988) (citation omitted) ("[T]he decision to vacate a default judgment is left to the sound discretion of the trial court."). District court denials or grants of relief under Rules 60(b)(1) and 60(b)(6) are reviewed for abuse of discretion. Budget Blinds, Inc. v. White, 536 F.3d 244, 251 (3d Cir. 2008). Determinations made under Rule 60(b)(4), in contrast, are subject to plenary review. Id. n.5 (citing Page v. Schweiker, 786 F.2d 150, 152 (3d Cir. 1986)); but see Marks Law Offices, LLC, 704 F. App'x at 176–77 (holding that district court did not abuse its discretion in denying Rule 60(b)(4) relief for deficient service of process).

The Third Circuit has consistently "emphasiz[ed] the extreme nature of a . . . default judgment," and has "repeatedly stated [its] preference that cases be disposed of on the merits

6

whenever practicable." Mrs. Ressler's Food Prods. v. KZY Logistics LLC, 675 F. App'x 136, 137 (3d Cir. 2017) (quoting Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 867 (3d Cir. 1994); Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984))). In fact, the Third Circuit has expressly stated that it "does not favor default judgments and in a close case, doubts should be resolved in favor of setting aside the default and reaching the merits." Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 420 (3d Cir. 1987). Therefore, a motion to set aside a default judgment is construed in favor of the movant. Romano, 2017 WL 3048968, at *3 (citation omitted).

## V. Discussion

### A. Parties' Contentions

VNB advances several reasons why the default judgment should be vacated under Rule 60(b). The judgment is void under Rule 60(b)(4), VNB argues, for two reasons. First, the default judgment violates Rule 54(c) because it awards treble damages, which the Complaint does not request, solely based on Plaintiff's UTPCPL claim (Count II), which does not seek relief against VNB. (Mot. at 2.) Second, the default judgment is void because it is premised on Plaintiff's collateral attack on VNB's state court judgments, which is prohibited by the Rooker-Feldman doctrine. (Id.) Next, VNB contends that there is good cause for the Court to vacate the default judgment under Rule 60(b)(1) because VNB has several meritorious defenses to the Complaint, and VNB's failure to respond to the Complaint was unintentional. (Id. at 9.) Finally, VNB alleges that the Court should vacate the default judgment under Rule 60(b)(6) because it would be a miscarriage of justice for Plaintiff to lose in state court and then file an action based on the same transaction in federal court. (Id. at 2–3.)

Plaintiff, on the other hand, contends that the default judgment is valid under Rule 60(b)(4) because Plaintiff sought damages against VNB in Count II, as the Complaint alleges that "those

identified on any sales or financing documents for the Cadillac and/or the Sorento" are liable for violating the UTPCPL, and VNB "most certainly would have been identified on the financing documents." (Resp. at 5–6[4]) (quoting Compl. ¶ 61.) Further, Plaintiff argues that the Complaint states a viable UTPCPL claim against VNB because Count II specifically identifies VNB as a violating party and because VNB participated in a predatory lending scheme by approving Plaintiff's Credit Statement even though VNB knew that the stated income was incorrect. (Id. at 7.) VNB approved Plaintiff's loan applications, Plaintiff avers, because they stated that Plaintiff earned approximately $30,000 annually–the minimum amount required for automobile dealers to qualify for VNB's promotion at the time–which approved loans up to $30,000 if the applicant earned $30,000 annually. (Id.)

Plaintiff next argues that the default judgment should not be vacated under Rule 60(b)(1) because Plaintiff will suffer "obvious" prejudice, as Plaintiff has expended time and resources to bring this matter to judgment; because Defendant has failed to file an Answer to the Complaint in order to set forth defenses, and the defenses alleged in Defendant's motion are not meritorious; and because Defendant's failure to respond was not inadvertent or inexcusable, as Defendant was properly served with the Complaint and all other pleadings and admitted to receiving timely[5] notices. (Id. at 8–9.)

Lastly, Plaintiff avers that the default judgment entered is proper under the circumstances because Defendant approved and processed two loans for Plaintiff, who could not afford either of the two cars, based on falsified information in Plaintiff's Credit Statement. (Id. at 9–10.)

---

[4] Because Plaintiff's Response does include page numbers, the Court refers to the page numbers of the ECF filing.
[5] As set forth above, Defendant does not admit to receiving timely notice of the January 22, 2018 hearing. The stamp on the Notice indicates that it was not received by Defendant's Legal Department until January 23, 2018. (Pertucci Decl. Ex. B.)

Defendant's Reply specifically refutes Plaintiff's contention that the Complaint states a UTPCPL claim against Defendant, arguing that Plaintiff's conclusory allegation in the Complaint that Defendant is a "subprime lender" does not, by itself, sustain a UTPCPL claim. (Rep. at 3–4.) Defendant also argues that Plaintiff cannot state a UTPCPL claim based on Defendant's alleged failure to catch that Plaintiff's stated income of $36,000 per year would not support car payments of $983 per month, as the UTPCPL does not impose a duty on Defendant to protect Plaintiff from excess debt. (Id. at 4.) In addition, Defendant seeks to clarify that the program through which Plaintiff obtained her loans was not a "promotion," and alleges that approval of loans under this program was based on fourteen criteria, not just income. (Id. at 6.)

### B. Analysis

As noted above, Defendant first argues that the default judgment is void and must be vacated under Rule 60(b)(4) because it was entered in violation of Rule 54(c) in that it awarded treble damages, which the Complaint does not seek, solely on the basis of the UTPCPL claim (Count II), which Plaintiff did not bring against Defendant. (Mot. at 10.) Rule 54(c) provides that a default judgment may not be "different in kind or exceed in amount that prayed for in the demand for judgment." Fed. R. Civ. P. 54(c); Marks & Sokolov, LLC, 2015 WL 1133788, at *2. That said, Rule 54(c) also states that "[e]very . . . final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). "[T]he relief available on default [should] be such as within the fair scope of the allegations of the complaint, and when money judgment is sought, the specific amount demanded." Marks & Sokolov, LLC, 2015 WL 1133788, at *2 (citation omitted).

At the outset, the Court notes that the award of treble damages does not violate Rule 54(c). Contrary to Defendant's claim, the Complaint does allege that "Plaintiff is entitled to treble damages of $53,918.37" under Count II. (Compl. ¶ 71.)

The Court also finds that the default judgment was based on the UTPCPL claim (Count II). Plaintiff does not address whether the default judgment was founded only on this claim, and Plaintiff's request for entry of default judgment in the amount of $85,851.31 does not reference any specific Count in the Complaint. (Pl.'s Request.) However, Plaintiff's Declaration in support of the request states that paragraphs 70–73 of the Complaint–Plaintiff's request for relief under Count II–sets forth Plaintiff's damages. (ECF 19-3, Pl. Decl. ¶ 1.) The amount of actual and treble damages requested in the Declaration matches the amounts sought in Count II of the Complaint.

Rule 54(c) does not bar Plaintiff from recovering under Count II if the Complaint states a UTPCPL claim against Defendant. See Degen v. Bunce, No. 93-5674, 1995 WL 120483, at *5 (E.D. Pa. Mar. 13, 1995) (DuBois, J.) (noting that Rule 54(c) limits a default judgment to the claims alleged in a complaint, even if they are inartfully pleaded). Defendant contends that the Complaint does not seek relief from Defendant because unlike Counts I, III, IV, and VII, which request relief "against the Defendants jointly or severally," Count II specifically seeks relief against "Dealer [JAS], Selzer [sic], and Ianicelli [sic]," similar to Counts V and VI, which Plaintiff brings only against Defendants JAS and Iannicelli.[6] (Compare Compl. ¶¶ 52, 82, 87, 109, with id. ¶¶ 73, 94, 99.) Plaintiff, on the other hand, argues that Complaint seeks relief against Defendant

---

[6] Plaintiff argues that the Complaint seeks relief from VNB in Counts V and VI–the intentional misrepresentation and breach of contract claims. (Resp. at 6.) However, the Complaint undermines Plaintiff's argument. Count V is identified as "Intentional Misrepresentation by Dealer [JAS], and Iannicelli [sic]." (Compl. at 15.) Similarly, Count VI is a breach of contract claim designated as "Plaintiff v. JAS Automotive and Thomas Iannicelli." (Id. at 16.) Neither Count refers to VNB.

in Count II, specifically highlighting the allegation that "Dealer [JAS], by or through its agents, including but not limited to Ianicelli [sic] and Seltzer, and <u>those identified on any sales or financing documents for the Cadillac and/or Sorento</u>," expressly or impliedly misrepresented that Plaintiff was retired, that Plaintiff was collecting Social Security and a pension, that Plaintiff had been employed for five years, that Plaintiff earned $2,500 per month in salary, and that Plaintiff earned $500 per month as a driver for JAS. (Resp. at 5–6; Compl. ¶ 61 (emphasis added).) As the lender, Defendant "would most certainly have been identified on the financing documents," Plaintiff contends. (Resp. at 6.)

The Court finds Defendant's argument persuasive. Although Count II of the Complaint identifies VNB as a violating party by alleging that "VNB is a financial lending institution specializing in subprime auto loans within the Commonwealth of Pennsylvania," Count II otherwise refers only to the misrepresentations and omissions of JAS, Iannicelli, and Seltzer as violating the UTPCPL. (Compl. ¶¶ 56, 63–66, 68–69.) Further, both the Sorento and Cadillac Installment Sale Contracts–the "financing documents" on which VNB is identified–only identify VNB as an assignee. (See Sparkes Decl. Exs. A, B, C.) The Third Circuit has held that "[t]he UTPCPL . . . does not impose liability on assignees" without specific allegations that an assignee committed wrongdoing. <u>Murphy v. Fed. Deposit Ins. Corp.</u>, 408 F. App'x 609, 611 (3d Cir. 2010); <u>see also</u> <u>Roche v. Sparkle City Realty</u>, No. 08-2518, 2009 WL 1674417, at *4 (E.D. Pa. June 12, 2009) (Kauffman, J.). As the Complaint does not allege that VNB was involved in completing or submitting her "forged and/or mischaracterized" Credit Statement, the UTPCPL does not impose liability upon VNB. (See Resp. at 9.) Therefore, the Court concludes that the default judgment is void under Rule 60(b)(4) because it grants relief against Defendant to which Plaintiff is not entitled.

11

Because Defendant's motion may be granted under Rule 60(b)(4), the Court need not consider whether the default judgment should be vacated under Rules 60(b)(1) or 60(b)(6).

**VI.  Conclusion**

For the foregoing reasons, Defendant's Motion to Vacate Default Judgment will be granted.

An appropriate Order follows.

O:\CIVIL 16\16-5232 Singleton v JAS Automotive\16cv5232 Memo re Mot. to Vacate.docx