**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WANDA SINGLETON,** | **CIVIL ACTION** |
| **v.** | **NO. 16-5232** |
| **JAS AUTOMOTIVE LLC d/b/a KIA OF COATESVILLE, THOMAS IANNICELLI, and VALLEY NATIONAL BANK** | |

**MEMORANDUM RE: MOTION TO DISMISS**

Baylson, J.                                                                                                  **May 1, 2019**

## I.      Introduction

Plaintiff Wanda Singleton filed this action against Defendants JAS Automotive LLC ("JAS"), a car dealer and Plaintiff's former employer; Thomas Iannicelli, an agent of JAS; and Valley National Bank ("VNB" or "Defendant"), which extended credit to Plaintiff to purchase a Cadillac and Kia Sorento ("Sorento"). The First Amended Complaint[1] ("Complaint") sets out the following Counts against Defendants:

1. **Count I**: Violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq., against all Defendants;

2. **Count II**: Violations of the Motor Vehicle Sales Finance Act ("MVSFA"), 69 Pa.C.S.A. § 601 et seq., and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa.C.S.A. § 201-1 et seq., against all Defendants;

3. **Count III**: Violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638 et seq., against all Defendants;

4. **Count IV**: Fraud against all Defendants;

5. **Count V**: Intentional misrepresentation against Defendants JAS and Iannicelli;

---

[1] The First Amended Complaint is entitled "Second Amended Complaint." (ECF 16, "Compl.") However, this is the only amended Complaint on the docket.

6. **Count VI**[2]: Breach of contract against Defendants JAS and Iannicelli; and

7. **Count VII**[3]: Violation of the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1601 et seq., against all Defendants.

Presently before this Court is VNB's Motion to Dismiss all Counts against it–Counts I, II, III, IV, and VII–pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (ECF 43, "MTD").[4] For the reasons discussed below, the Motion will be GRANTED.

## II. Factual Background

Taking Plaintiff's allegations as true, the factual background is as follows.[5] In or about October 2011, Plaintiff was interested in purchasing a car from JAS, for whom Plaintiff had been employed for less than six months. (Compl. ¶¶ 8–10.) On or about October 6, 2011, at the direction, advice, and encouragement of JAS's employees, Plaintiff purchased a 2008 Cadillac DTS. (Id. ¶ 12.) On the same date, at the direction, advice, and encouragement of JAS, Plaintiff also purchased a 2012 Sorento. (Id. ¶ 13.) When Plaintiff purchased both vehicles, Tom Seltzer, JAS's finance manager, completed an "Applicant's Credit Statement" ("Credit Statement") for Plaintiff. (Id. ¶¶ 18, 19.) The Credit Statement indicated that Plaintiff was a retired individual collecting Social Security and a pension, had earned a monthly salary of $2,500 for five years, and made $500 per month as a driver for JAS. (Id. ¶ 19.) The Credit Statement also stated that Plaintiff had a mortgage and other financial obligations. (Id. ¶ 33.) Plaintiff alleges that she informed JAS that she earned approximately $1,100 per month, consisting of less than $500 from JAS and $750

---

[2] The Complaint identifies the breach of contract claim as "Count VII" without including a Count VI. Therefore, the Court refers to Plaintiff's breach of contract claim as "Count VI."

[3] The Complaint refers to the CCPA claim as "Count VIII." The Court identifies this claim as "Count VII" so that the Counts are sequential.

[4] Though VNB moves to dismiss the Complaint in its entirety, VNB only specifically raises arguments regarding the UTPCPL and fraud claims–Counts II and IV. See (MTD at 16 ("[T]he Court should dismiss the Complaint with prejudice in its entirety as concerns all claims asserted against Valley.").)

[5] The facts and procedural history were summarized in the Court's memorandum granting Defendant's Motion to Vacate Entry of Default Judgment. (See ECF 39 at 2–4; 2019 WL 199897, at *1–2.) The Court repeats the alleged facts and the procedural history relevant to the instant Motion.

in Social Security.  (Id. at ¶¶ 19–20.)  According to Plaintiff, Seltzer did not show her the first page of the Credit Statement, so Plaintiff signed the signature page of the Credit Statement without realizing what she was signing.  (Id.)  Based on the Credit Statement, the same loan officer from VNB approved Plaintiff to receive $68,000 in credit to purchase both vehicles on the same day. (Id. ¶ 21.)[6]

VNB made two loans to Plaintiff.  The first was a $39,922.10 loan, which Plaintiff used to purchase the Sorento.  (ECF 43-2, Sparkes Decl. Ex. A.)  According to the Installment Sale Contract for the loan, Plaintiff traded in a Hyundai Sonata, which had a lien attached to it, for the Sorento.  (Id.)  The second was a $22,494.55 loan, which Plaintiff used to purchase the Cadillac. (Sparkes Decl. Ex. B.)  The Installment Sale Contract for the Cadillac loan states that Plaintiff traded in a Ford Mustang for the Cadillac.  (Id.)  The Ford Mustang also had a lien attached to it that had to be paid off.  (Id.)  VNB assigned both loans to its wholly-owned subsidiary, VNB Loan Servicing, Inc. ("LSI").  (MTD at 2.)

When Plaintiff returned home with both vehicles, she realized that she could not afford them and did not want them, so she returned to JAS less than twenty-four-hours after signing the contracts to return them.  (Compl. ¶¶ 23–24.)  JAS refused to rescind the transactions because the paperwork had been put through.  (Id. ¶ 25.)

Plaintiff voluntarily surrendered both vehicles.  (Id. ¶ 34.)  In December 2011, Plaintiff contacted VNB to surrender the Sorento after making one payment.  (MTD at 3; ECF 43-3, Gonzalez Decl. ¶ 5.)  In 2015, Plaintiff defaulted on the Cadillac.  (MTD at 3.)

## III.    Procedural History

### A.  State Court Actions

---

[6] VNB alleged in the Motion to Vacate Default Judgment that it was not involved in compiling or obtaining the information contained in the Credit Statement, and that VNB generally does not independently verify the information in a loan application provided by a customer through a dealer, like JAS.  (ECF 35 at 4.)

LSI sold both cars but did not recover sufficient funds to satisfy the loans. (See Compl. ¶ 34.) As a result, LSI sued Plaintiff for the Sorento deficiency ("Sorento action"), and after Plaintiff failed to respond, default judgment was entered against Plaintiff in the amount of $8,092.34 on April 13, 2015. (Id. ¶¶ 34–36.)

LSI also sued Plaintiff for the Cadillac deficiency ("Cadillac action"), and default judgment was entered against Plaintiff in the Magisterial District Court in the amount of $9,880.45 on April 5, 2016. (MTD at 4; Gonzalez Decl. ¶ 11, Ex. E.) Plaintiff filed an appeal to the Court of Common Pleas, after which LSI filed a Complaint, alleging breach of contract and unjust enrichment. (MTD at 4; Gonzalez Decl. ¶ 13.) Plaintiff filed an "Answer with New Matter" setting forth forty-four defenses, including fraud, "the doctrine of illegality," and unconscionability, to which LSI replied. (MTD at 4; Gonzalez Decl. Ex. E.) The lawsuit proceeded to arbitration, where Plaintiff stipulated to the entry of an arbitration award of $9,716.95 on December 7, 2016. (MTD at 4; Gonzalez Decl. Exs. H, I.) [7] LSI filed a "Notice of Judgment" and "Praecipe for Judgment" for that amount[8] on March 31, 2017. (MTD at 4; Gonzalez Decl. Exs. H, I; VNB Supp. Ex. A.)[9]

---

[7] VNB contends that this matter was subject to compulsory arbitrary pursuant to Chester County Rule of Civil Procedure 1301.1, which applies to any civil matter that does not involve a title to real property where the amount-in-controversy does not exceed $50,000. (ECF 49, "VNB Supp." at 3.)

[8] The Complaint incorrectly alleges that $9,880.45, the amount of the Magisterial District Court award, was the final judgment entered. (Compl. ¶¶ 36–37.)

[9] Plaintiff has confirmed, by way of Supplemental Response, that the arbitration award in the Cadillac action was confirmed as a judgment by the Court of Common Pleas. (ECF 48, "Pl. Supp." at 3.) At the same time, however, Plaintiff contends that the Cadillac judgment is procedurally deficient because VNB was required to file a Motion to Confirm the Arbitration Award pursuant to Local Rule 1327, and VNB failed to do so. (Pl. Supp. at 5.) According to Plaintiff, Local Rules 1326–31 govern this action because it involves a consumer credit transaction, and therefore, the Praecipe for Judgment on Arbitration Award filed by VNB pursuant to Rule 1307(c) did not confirm the award. (Id. at 4–5.) Plaintiff does not cite any cases for this proposition. VNB, on the other hand, contends that the Court of Common Pleas did not need to "confirm" the award because Plaintiff failed to challenge the award within thirty days, and thus, the Prothonotary was required to enter judgment on VNB's Praecipe for Judgment. (VNB Supp. at 4–5) (citing Pa. R. Civ. P. 1307(c)).) VNB also argues that Rule 1307, not Rules 1326 or 1327, are applicable in cases involving mandatory arbitration conducted in the Court of Common Pleas, as in this case. (VNB Supp. at 5.) As the parties do not dispute that the arbitration award in the Cadillac action was entered as a final judgment by the Court of Common Pleas, this Court need not draw any conclusions on this issue when ruling on the Motion to Dismiss in this federal case.

Both judgments against Plaintiff were entered in the Court of Common Pleas of Chester County, Pennsylvania. (Compl. ¶ 37.) Plaintiff did not appeal either award. (See Pl. Supp. at 3) ("Plaintiff has never sought the judicial vacation of those [state] judgments in this matter.")

**B. Federal Court Action**

Plaintiff filed the original Complaint in this Court on October 3, 2016 against Defendants JAS and Iannicelli (ECF 1). Defendants filed an Answer on December 30, 2016 (ECF 6). Plaintiff moved for leave to join VNB as a Defendant on May 23, 2017 (ECF 14), which the Court granted on July 24, 2017 (ECF 15). Plaintiff filed the amended Complaint against all Defendants, including VNB, on September 12, 2017 (ECF 16). JAS filed an Answer on November 10, 2017 (ECF 17). The action was dismissed with prejudice as to JAS on March 19, 2018, and as to Iannicelli on April 13, 2018, pursuant to agreement of counsel under Local Rule of Civil Procedure 41.1(b) (ECF 27, 28).

On December 6, 2017, Plaintiff filed an Affidavit of Service of the Summons and the amended Complaint on VNB (ECF 18). On January 9, 2018, Plaintiff filed a request for entry of default of judgment against VNB pursuant to Federal Rules of Civil Procedure 55(a) and (b)(1) in the amount of $85,851.31 (ECF 19). Default was entered by the Clerk on the same date.[10] On January 22, 2018, the Court held a hearing pertaining to case management and Plaintiff's request for a default judgment against VNB (ECF 23). On September 18, 2018, default judgment was entered against VNB in the amount of $104,477.60, and the case was closed (ECF 32).

VNB filed a Motion to Vacate Entry of Default Judgment and to allow VNB twenty days to file a response to the Complaint on October 12, 2018 (ECF 35). Plaintiff filed a Response on October 26, 2018 (ECF 36), and VNB filed a Reply on November 2, 2018 (ECF 37). The Court

---

[10] The clerk's entry of default is not assigned a docket number.

granted VNB's Motion to Vacate on January 15, 2019 (ECF 39, 40). The Court concluded that the default judgment was void pursuant to Federal Rule of Civil Procedure 60(b)(4) because the default judgment granted Plaintiff relief against VNB to which Plaintiff was not entitled in violation of Rule 54(c). 2019 WL 199897, at *5–6.

The Court held a pretrial conference on February 4, 2019 (ECF 42). On February 11, 2019, VNB filed a Motion to Dismiss (ECF 43); Plaintiff filed a Response on February 28, 2019 (ECF 45, "Resp."); and VNB filed a Reply on March 8, 2019 (ECF 46, "Rep."). On April 8, 2019, the Court ordered counsel to file supplemental memoranda addressing whether the arbitration award in the Cadillac action was confirmed by the state court and, if so, whether Plaintiff appealed that award (ECF 47). Pursuant to the Court's order, Plaintiff filed a Supplemental Response on April 16, 2019 (ECF 48), and VNB filed a Supplemental Memorandum on April 18, 2019 (ECF 49).

## IV.     Legal Standard

### A.  Rule 12(b)(1)

A court "must grant" a Rule 12(b)(1) "motion to dismiss if it lacks subject-matter jurisdiction to hear the claim." In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may present either a facial or a factual attack. Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack concerns "'an alleged pleading deficiency' whereas a factual attack concerns "'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008) (quoting United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007) (alterations in original)).

In this case, VNB's challenge is factual because the Motion challenges whether this Court has actual jurisdiction to hear the case. See CNA, 535 F.3d at 139. When considering a factual challenge, "'the plaintiff will have the burden of proof that jurisdiction does in fact exist,' and the court 'is free to weigh the evidence and satisfy itself of its power to hear the case.'" Davis, 824 F.3d at 346 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). Further, "[i]n reviewing a factual attack, the court may consider evidence outside the pleadings." Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortenson, 549 F.2d at 891.

### B. Rule 12(b)(6)

By contrast, when considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also

Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

### C. Rule 9(b)

Rule 9(b) adds an additional pleading requirement to certain claims. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must sate with particularity the circumstances constituting fraud or mistake[.]" Fed. R Civ. P. 9(b). The particularity standard of Rule 9(b) may be satisfied by pleading "the date, time and place of the alleged fraud or otherwise inject[ing] precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). This requirement "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997). Even prior to discovery, "[b]oilerplate and conclusory allegations are insufficient" to satisfy the particularity requirement. New Legion Co. v. Thandi, No. 18-778, 2018 WL 6329144, at *2 (E.D. Pa. Dec. 4, 2018) (Baylson, J.) (citing In re Burlington, 114 F.3d at 1418).

### V. Discussion

### A. Parties' Contentions

VNB first contends all Counts against it–Counts I, II, III, IV, and VII–must be dismissed under Rule 12(b)(1) because this Court lacks jurisdiction under the Rooker-Feldman doctrine.

(MTD 10–11.)  Specifically, VNB argues that Plaintiff attacks the validity of the state court judgments by using the judgments as the measure of damages in the Complaint.  (<u>Id.</u> at 11.)

VNB then contends that Plaintiff's claims must be dismissed under Rule 12(b)(6) for several reasons.  First,  Plaintiff's claims are barred by the doctrine of res judicata because the state and federal court actions both arise out of the same Installment Sale Contracts executed in October 2011; Plaintiff could have brought all defenses and claims asserted in this action in state court; both the state and federal actions involve the same parties, as LSI, the plaintiff in the state court actions, is a wholly-owned subsidiary of VNB; and both parties are acting in the same capacity as in state court.  (<u>Id.</u> at 6–10.)  Next, VNB contends that the UTPCPL claim in Count II and the fraud claim in Count IV must be dismissed for failure to state a claim.  With respect to Count II, VNB argues that Plaintiff has failed to allege that VNB engaged in deception on which Plaintiff justifiably relief, as required to state a claim under the UTPCPL.  (<u>Id.</u> at 15.)  As to Counts II and IV, VNB avers that Plaintiff fails to allege facts with sufficient particularity to withstand dismissal under Rule 9(b).  (<u>Id.</u> at 16.)

Plaintiff, on the other hand, contends that Counts I, II, III, IV, and VII should not be dismissed under Rule 12(b)(1) because <u>Rooker-Feldman</u> is inapplicable.  (Resp. at 11.)  Plaintiff argues that she is not challenging the state court deficiency judgments, but rather is seeking damages based on VNB's predatory lending practices.  (<u>Id.</u>)

Regarding VNB's Motion under Rule 12(b)(6), Plaintiff argues that res judicata does not bar Plaintiff's claims because the state court entered a default judgment and an arbitration award, and so no issues were actually litigated.  (<u>Id.</u> at 8.)  Plaintiff also avers that based on discovery produced in this matter, VNB deliberately hid documents and information to obtain deficiency judgments, which prevented Plaintiff from fully litigating her claims in state court.  (<u>Id.</u> at 12.)

Plaintiff then argues that Counts II and IV should not be dismissed for failure to state a claim. The Complaint states a viable UTPCPL claim against VNB, Plaintiff contends, because Count II specifically identifies VNB as a violating party and VNB participated in a predatory lending scheme by approving Plaintiff's Credit Statement, even though VNB knew that the stated income would not support the monthly loan payments. (Id. at 14.) VNB approved Plaintiff's loan applications, Plaintiff avers, because they stated that Plaintiff earned approximately $30,000 annually–the minimum amount required for automobile dealers to qualify for VNB's promotion at the time–which approved loans up to $30,000 if the applicant earned $30,000 annually. (Id. at 15.) According to Plaintiff, even if Plaintiff had earned $30,000 annually, that amount would not support one loan, let alone two loans to the same person on the same day. (Id.)

VNB's Reply specifically refutes Plaintiff's contention that default judgments lack preclusive effect, arguing that Plaintiff confuses the doctrine of res judicata with collateral estoppel. (Rep. at 1–2.) Next, VNB seeks to clarify that VNB did not withhold documents in state court, explaining that VNB produced additional documents in federal court because the subpoena in federal court was broader than the document demand served in state court. (Id. at 3.) Lastly, VNB characterizes Plaintiff's argument regarding the facts alleged in support of Counts II and IV as "legal conclusions and hyperbole," as opposed to factual assertions that VNB acted improperly, as necessary to sustain fraud claims. (Id. at 5.)

**B. Analysis**

**i. Motion to Dismiss under Rule 12(b)(1)–The <u>Rooker-Feldman</u> Doctrine Divests this Court of Subject Matter Jurisdiction.**

As noted above, VNB moves to dismiss the Complaint pursuant to Rule 12(b)(1), contending that the <u>Rooker-Feldman</u> doctrine divests this Court of subject matter jurisdiction over Plaintiff's claims. Under the <u>Rooker-Feldman</u> doctrine, "federal district courts lack jurisdiction

over suits that are essentially appeals from state-court judgments." Great W. Mining & Mineral Co. v. Fox Rothschild, LLP, 615 F.3d 159, 165 (3d Cir. 2010). The doctrine applies only in "limited circumstances" and is "confined to cases . . . brought by state-court losers inviting district court review and rejection of the state court's judgments." Skinner v. Switzer, 562 U.S. 521, 532 (2011) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 280, 291, 292 (2005)). In recognition of the doctrine's "reduced reach," the Third Circuit has instructed that the doctrine applies only when the following four requirements are met:

> (1) [T]he federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

Great W. Mining & Mineral Co., 615 F.3d at 166 (quoting Exxon Mobil, 544 U.S. at 284) (alterations in original). In this analysis, "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." Great W. Mining & Mineral Co., 615 F.3d at 166.

As to the second factor, "[i]f the defendants, rather than the state court judgments, caused the injuries complained of, Rooker-Feldman does not apply and the district court is not barred from reviewing those injuries." Mikhail v. Kahn, 991 F. Supp. 2d 596, 614 (E.D. Pa. 2014) (Pratter, J.). In other words, "[t]he question is: was the source of the injury the defendant's conduct," in which case Rooker-Feldman would not apply, "or the state court judgment." Minton v. Cach, LLC, No. 14-4371, 2014 WL 4764183, at *3 (E.D. Pa. Sept. 25, 2014) (Savage, J.). Determining whether this doctrine applies is especially difficult in cases where "a federal plaintiff complains of an injury that is in some fashion related to a state-court proceeding," as "even injuries that 'help[] to cause the adverse state judgments' may be 'independent' of those judgments.'" Mikhail, 991 F. Supp. 2d at 614 (quoting Great W. Mining & Mineral Co., 615 F.3d at 168). In a

close case, "[a] useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." Great W. Mining & Mineral Co., 615 F.3d at 167.

The second and fourth requirements are "closely related." Id. at 168. The fourth requirement "targets [ ] whether the plaintiff's claims will require appellate review of state-court decisions by the district court." Id. at 169. "Prohibited appellate review 'consists of a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with the law.'" Id. (citation omitted). Where a plaintiff attempts to litigate a matter that was previously litigated, "there is jurisdiction as long as the 'federal plaintiff present[s] some independent claim,' even if that claim denies a legal conclusion reached by the state court." Id. (quoting Exxon Mobil, 544 U.S. at 293). Put another way, "if the federal court's review does not concern 'the bona fides of the prior judgment,' the federal court 'is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment.'" In re Phila. Entmt. & Dev. Partners, 879 F.3d 492, 500 (3d Cir. 2018) (quoting Great W. Mining & Mineral Co., 615 F.3d at 166).

Here, the first requirement is met because Plaintiff "lost" in state court when LSI obtained two judgments[11] to collect the deficiencies on both loans. The third requirement has also been met because both judgments were rendered before the Motion for Joinder attaching the Proposed

---

[11] It is irrelevant to the Court's analysis that the Sorento judgment was entered on default and that the Cadillac judgment was a final arbitration award. See Todd v. United States Bank Nat'l Ass'n, 685 F. App'x 103, 105 (3d Cir. 2017) ("[A] validly entered default judgment can bar federal jurisdiction under the Rooker-Feldman doctrine."); id. at 105 n.8 (citing In re Knapper, 407 F.3d 573, 581 (3d Cir. 2005) (holding that a federal claim was barred by the Rooker-Feldman doctrine because the plaintiff could not "prevail on her federal claim without obtaining an order that would negate the state courts' [default] judgments")); cf. Great W. Mining & Mineral Co. v. ADR Options, Inc., 434 F. App'x 83, 86 (3d Cir. 2011) (holding that the Rooker-Feldman doctrine did not divest the court of jurisdiction because the plaintiff did not allege that its injuries were caused by the state courts' refusal to vacate an arbitration award or award it monetary relief); Kelly v. MBNA Am. Bank., No. 06-228-JJF, 2007 WL 1830892, at *3 (D. Del. June 25, 2007) (declining to dismiss claims on the basis of Rooker-Feldman where there were arbitration awards, but no state court judgment).

Amended Complaint was filed on May 23, 2017 (ECF 14-1), and before the amended Complaint

was filed on September 12, 2017.[12]

Further, the second and fourth requirements have been met because Plaintiff is effectively

asking this Court to undermine the state court's determinations that valid, enforceable Installment

Sale Contracts existed, and that Plaintiff defaulted under those agreements.  See Morgan v. Bank

of Am., N.A., No. 18-3671, 2019 WL 1332179, at *3 (E.D. Pa. Mar. 25, 2019) (McHugh, J.)

(concluding that the Rooker-Feldman doctrine barred the homeowner's contractual claims, which

invited the district court to reject the state court's conclusion that a valid mortgage contract existed,

and that as a result, the bank could lawfully foreclose on the property).  In the Cadillac action,

Plaintiff raised many defenses to LSI's breach of contract and unjust enrichment claims, including

fraud, "illegality," and unjust enrichment.  (Gonzalez Decl. Ex. F.)[13]  By enforcing the arbitration

award as a judgment in LSI's favor, the state court effectively rejected Plaintiff's defenses in

---

[12] Neither party raises the issue that the original Complaint in this action was filed before judgment was entered in the Cadillac action.  The Court notes that it is not aware of any precedential judicial decisions addressing whether the filing date of the original complaint, as opposed to an amended complaint, is applicable for purposes of Rooker-Feldman.  However, judges in this Circuit have suggested that when an amended complaint adds a new defendant, the filing date of the amended complaint applies. Cf. Nahas v. Shore Med. Ctr., No. 13-6537 (RBK/AMD), 2016 WL 1029362, at *5–6 (D.N.J. Mar. 15, 2016) (examining federal and local rules regarding the date that an action commences for statute of limitations purposes in concluding that it was inappropriate for the court to apply the date of the amended complaint for purposes of Rooker-Feldman); id. at *5 (citing McCloud v. Mairs, No. 12-2556, 2014 WL 8990043, at *2 (E.D.N.Y. Oct. 24, 2014) (when determining the operative complaint for Rooker-Feldman purposes, noting that in other contexts, "the filing of an amended complaint that does not add a new defendant does not alter the date on which the federal suit is commenced"); In re One Meridian Plaza Fire Litig., Nos. CIV. A. 91-2171–72, 2226–27, 2374, 2545–47, 1993 WL 308726, at *2 (E.D. Pa. Aug. 12, 1993) (Buckwalter, J.) ("The filing of a motion for leave to amend a complaint to add a defendant, accompanied by the proposed amended complaint, commences an action and tolls the statute of limitations from the date the motion is filed.").  The Court finds these cases instructive.  As the amended Complaint added VNB as a new Defendant, the Court concludes that the amended Complaint is the operative complaint for the Rooker-Feldman analysis.
[13] Though Plaintiff did not specifically raise ECOA, TILA, UTPCPL, or CCPA claims in state court, Rooker-Feldman is still applicable.  As this Court has noted, "presenting in federal court a legal theory not raised in state court . . . cannot insulate a federal plaintiff's suit from Rooker-Feldman if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have the state-court judgment reversed." King v. Burr, No. 2:17-cv-02315-MMB, 2017 WL 3705872, at *5 (E.D. Pa. Aug. 24, 2017) (Baylson, J.) (quoting Schatten v. Weichert Realtors, Inc., 406 F. App'x 589, 593 (3d Cir. 2010) (granting motion to dismiss for lack of subject matter jurisdiction under Rooker-Feldman)).

concluding that the Installment Sale Contract for the Cadillac was valid, and that pursuant to the contract, Plaintiff owed a deficiency.

Plaintiff contends that her claims in this action are attributable to VNB's alleged "predatory lending practices and procedures in granting sub-prime loans" that preceded the state court judgments, not the state court judgments themselves. (Resp. at 8.) However, the only predatory lending activity alleged in the Complaint is that VNB unlawfully approved Plaintiff's falsified loan applications, rendering the Installment Sale Contracts invalid. In other words, the injuries about which Plaintiff complains in this action were caused by the state court judgments. See Great W. Mining & Mineral Co., 615 F.3d at 167.

This conclusion is reinforced by the actual damages requested in Counts I, II, III, IV, and VII–the Counts at issue. Counts I and II–Plaintiff's ECOA and UTPCPL claims–seek actual damages "in excess of $17,972.79," which is the sum of the Sorento and Cadillac judgments. (Compl. ¶¶ 49, 70.) Count II also seeks punitive damages "in excess of $35,945.58"–double the amount of the state court judgments, and treble damages "in excess of $53,918.37"–three times the amount of the judgments. (Id. ¶¶ 71–72.) Count III–Plaintiff's TILA claim–seeks actual damages of $8,09.34 relating to the Cadillac and $9,880.45 relating to the Sorento–the amount of the deficiency judgments. (Id. ¶¶ 80–81.) Similarly, Count IV–Plaintiff's fraud claim–seeks actual damages "in excess of $18,000.00," which also refers to the state court judgments. (Id. ¶ 87(c); see id. ¶ 67(e) ("As a result of [Defendants'] conduct, the Plaintiff suffered [ ] damages . . . regarding the Cadillac and Sorento, including but not limited to . . . judgements in excess of $18,000.00."))

Count VII–the CCPA claim–does not specifically request the amount of the deficiency judgments as damages. However, the CCPA claim, which contains a statement incorporating all

preceding allegations, is effectively a TILA claim styled as a CCPA claim. Both Counts allege that Defendants failed to disclose all terms of the credit transactions in violation of 15 U.S.C. § 1638(a). (See id. ¶ 78 (TILA) (alleging that Defendants failed to accurately disclose the applicable annual percentage rate in violation of the TILA, 15 U.S.C. § 1638(a)(3), 12 C.F.R. §§ 226.18(32)[14], 226.22); id. ¶¶ 103–05 (CCPA) (alleging that Defendants failed to disclose all terms of the credit transaction in violation of the CCPA, 15 U.S.C. § 1638(a)(2)(B), (a)(3)); see also Onafalujo v. D&K Auto Sales & Servs., LLC, No. 1:18-CV-408, 2019 WL 1515061, at *3 (M.D. Pa. Apr. 8, 2019) (characterizing 15 U.S.C. § 1638(a), which requires certain disclosures in consumer credit transactions, as part of the TILA); Pocopson Indus., Inc. v. Hudson United Bank, No. 05-6173, 2006 WL 2092578, at *6, *11 (E.D. Pa. July 26, 2006) (O'Neill, J.) (identifying the ECOA and TILA as components of the CCPA). Further, the Response characterizes the state judgments as Plaintiff's injury, without referring to specific Counts. (See Resp. at 9) ("The deficiency judgments are the consequences the plaintiff has sustained and continues to suffer from . . . .")

In sum, to grant Plaintiff the relief she seeks would require this Court to review and reject the state court's judgments. See Easley v. New Century Mortg. Corp., 394 F. App'x 946, 948 (3d Cir. 2010) ("Here, at least in part, [the plaintiff] seeks damages stemming directly from the state court's judgment in the foreclosure action. For example, she seeks compensation for . . . the damage to her credit rating caused by the foreclosure. That part of her [Consumer Protection Law] claim was properly dismissed for lack of subject matter jurisdiction under Rooker-Feldman."); Bivens v. Pennsylvania, No. 1:17-CV-00809, 2019 WL 1141082, at *3 (M.D. Pa. Feb. 21, 2019) ("Where a plaintiff's asserted damages arise directly from the state court decision at issue, the

---

[14] As 15 U.S.C. § 1638(a)(3) does not refer to the annual percentage rate, the Court may reasonably infer that Plaintiff was referring to § 1638(a)(4). Similarly, as Regulation Z, 12 C.F.R. § 226.18, does not include a sub-section 32, this Court may infer that Plaintiff meant to invoke § 226.18(e), which addresses annual percentage rates.

plaintiff's damages claim is barred by the <u>Rooker-Feldman</u> doctrine."); <u>see also</u> <u>In re Zaid</u>, 582 B.R. 370, 378 (E.D. Pa. Bankr. 2018) (citation omitted) ("<u>[T]he relief sought</u> . . . by the federal plaintiff will be particularly significant in determining whether the Rooker-Feldman doctrine applies.").[15]  The appropriate forum to challenge the deficiency judgments would have been a higher level state court, but Plaintiff failed to file a timely notice of appeal of either judgment, and the thirty day period allotted to file a notice of appeal has lapsed.  <u>See</u> <u>Carroll v. Welch</u>, No. 06-4502, 2007 WL 1377654, at *4 (E.D. Pa. May 9, 2007) (Baylson, J.) (granting the defendant's motion to dismiss with prejudice on <u>Rooker-Feldman</u> grounds where the plaintiff failed to appeal final state court orders).  Though this Court does not take lightly Plaintiff's financial hardship, the Court concludes that the <u>Rooker-Feldman</u> doctrine bars this Court's review of Plaintiff's claims.

### ii.  Motion to Dismiss under Rule 12(b)(6)–Res Judicata Does Not Apply.

VNB also contends even if <u>Rooker-Feldman</u> were not applicable, Plaintiff is barred from bringing any claims against VNB by res judicata because Plaintiff's claims were raised, or could have been raised, between Plaintiff and LSI in state court.  "Because <u>Rooker-Feldman</u> only concerns a federal district court's jurisdiction, analysis of whether a plaintiff's claims are barred by res judicata is also necessary."  <u>Aggie v. Pa. Dep't of Human Servs.</u>, No. 15-5456, 2015 WL

---

[15] The Court distinguishes this case from <u>In re Philadelphia Entertainment & Development Partners</u>, a bankruptcy action involving a state revocation of a slot machine license, for which the plaintiff paid $50 million.  879 F.3d at 494.  After the state court upheld the revocation, the plaintiff challenged the revocation as a fraudulent transfer in Bankruptcy Court and sought recovery for the full value of the transfer, which the plaintiff estimated to be about $50 million (the amount of the license fee).  <u>Id.</u> at 495–96.  The Bankruptcy Court concluded that it lacked subject matter jurisdiction under <u>Rooker-Feldman</u>, and the District Court affirmed.  <u>Id.</u>  On appeal, the Third Circuit reversed the decisions of the Bankruptcy Court and District Court, holding that "[b]ecause the fraudulent transfer claim in the Bankruptcy Court was independent of the . . . claims previous advanced in the state court, it d[id] not matter for <u>Rooker-Feldman</u> doctrine purposes that the relief the [plaintiff] sought, if granted, would frustrate the [state] [c]ourt's order."  <u>Id.</u> at 502.  In short, the Third Circuit rejected the Bankruptcy Court's conclusion that awarding the damages sought–the value of the license–would be equivalent of voiding the revocation upheld in state court.  <u>See</u> <u>id.</u> at 503.  In contrast to that case, where the Bankruptcy Court could have determined whether the license revocation was a fraudulent transfer without rejecting or even reviewing the state court's decision, in this case, Plaintiff is complaining of a legal injury caused by the state court judgments.  <u>See</u> <u>id.</u> at 501.  As a result, this Court cannot determine whether VNB engaged in predatory lending practices without reviewing or rejecting the state court's deficiency judgments.

8007570, at *10 (E.D. Pa. Dec. 7, 2015) (Goldberg, J.); cf. Great W. Mining & Mineral Co., 615 F.3d at 170 (quoting Exxon Mobil, 544 U.S. at 293) ("As a final step, should the Rooker-Feldman doctrine not apply such that the district court has jurisdiction, 'disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law.'").

In determining the applicability of res judicata, also known as claim preclusion[16], this Court "must give the same preclusive effect to the common pleas court case that the courts in Pennsylvania, the state in which the judgment was entered, would give." Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 548 (3d Cir. 2006). Pennsylvania state courts have held that the doctrine of res judicata applies if both the federal and state actions share the following elements: "(1) identity in the thing sued upon; (2) identity in the cause of action; (3) identity of person and parties to the action; and (4) identity of the capacity of the parties suing or being sued." Birchall v. Countrywide Home Loans, Inc., No. 08-2447, 2009 WL 3822201, at *7 (E.D. Pa. Nov. 12, 2009) (Pratter, J.) (citing In re Iulo, 766 A.2d 335, 337 (Pa. 2001)). In Pennsylvania, "[r]es judicata applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action." Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (Pa. 1995).

Plaintiff argues that res judicata is inapplicable because neither the Sorento judgment, which was entered by default, nor the Cadillac judgment, which enforced an arbitration award, have preclusive effect. (Resp. at 8.) Plaintiff confuses collateral estoppel, also known as issue preclusion, with res judicata. See Wilson v. Reliance Ins. Co., 138 F. App'x 457, 459 (3d Cir.

---

[16] The Third Circuit has stated that "claim preclusion replaces 'res judicata' and encompasses both merger and bar principles in giving dispositive effect in a later action to a prior judgment. . . . Claim preclusion prevents a party from prevailing on issues [s]he might have but did not assert in the first action." Jones v. LVNV Funding, LLC, No. 16-cv-2735, 2016 WL 3940310, at *1 n.1 (E.D. Pa. July 20, 2016) (Baylson, J.) (quoting Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988)). As the Pennsylvania Supreme Court uses the terms interchangeably, the Court refers to this principle as "res judicata," following the parties' briefs. See Balent, 669 A.2d at 313 (noting that the doctrine of res judicata is also referred to as claim preclusion).

2005) (citing <u>Morris v. Jones</u>, 329 U.S. 545, 550–51 (1947) ("Unlike collateral estoppel, a default judgment can support a claim of res judicata.")); <u>Fox v. Gabler</u>, 626 A.2d 1141, 1143 (Pa. 1993) ("[W]e long ago concluded that the judgment by default <u>res judicata</u> and quite as conclusive as one rendered on a verdict after litigation insofar as a defaulting defendant is concerned."). The same rule applies to the Cadillac judgment, which enforced an arbitration award. <u>See</u> <u>Clientron Corp. v. Devon IT, Inc.</u>, 154 F. Supp. 3d 132, 145–46 (E.D. Pa. 2015) (Baylson, J.) (citing <u>Witkowski v. Welch</u>, 173 F.3d 192, 200 (3d Cir. 1999) (noting that the Third Circuit has cited with approval the Restatement (Second) of Judgments § 84 (1982), which states that "a valid and final award by arbitration has the same effects under the rules of res judicata . . . as a judgment of a court")).

Turning to the first requirement of res judicata–identity of the thing sued upon–Defendant argues that both the state and federal court actions arise out of the same Installment Sale Contracts and the circumstances in which Plaintiff's loan applications were prepared, submitted, and reviewed in October 2011. (MTD at 7.) Plaintiff argues that the identity of the thing sued upon is "completely different," but does not explain why. (Resp. at 8.) The Court finds Defendant's argument persuasive, as Plaintiff is "seeking essentially the same relief in both actions." <u>Carroll</u>, 2007 WL 1377654, at *5. Plaintiff believes that the sale of the cars and the Installment Sale Contracts were unlawful, and she wishes to receive damages to compensate her for the injuries she claims she sustained as a result. <u>See</u> <u>id.</u>

As to the second requirement–identity in the cause of action–Defendant argues that Plaintiff raised fraud, duress, "illegality," and unconscionability as defenses to payment in the Cadillac action, and that Plaintiff could have raised the same defenses in the Sorento action if she had not defaulted. (MTD at 8.) Plaintiff, on the other hand, contends that the causes of action are

not the same because in the present action, Plaintiff is seeking a different form of relief: consumer protection damages. (Resp. at 9–10.) Though Plaintiff does not cite any cases to support this proposition, Plaintiff is correct that "res judicata will not bar a subsequent action where the damages for which relief was sought in the earlier action were entirely different." <u>Hopewell Estates, Inc. v. Kent</u>, 646 A.2d 1192, 1195 (Pa. Super. Ct. 1994) (citations omitted). That said, this rule is inapplicable because Plaintiff, the defendant in state court, did not seek damages in the state court actions. Plaintiff has failed to cite, nor is this Court aware of, any precedential judicial decisions that support Plaintiff's position.

Rather, in determining whether there is identity in the cases of action, a court may examine "the identity of the acts complained of, the demand for recovery, the identity of witnesses, documents, and facts alleged." <u>Turner</u>, 449 F.3d at 549 (quoting <u>McArdle v. Tronetti</u>, 627 A.2d 1219, 1222 (Pa. Super. Ct. 1993)). "The essential inquiry . . . turns on 'the essential similarity of the underlying events giving rise to legal claims.'" <u>Carroll</u>, 2007 WL 1377654, at *5 (quoting <u>Turner</u>, 449 F.3d at 549). Here, the second requirement has been met because the underlying events giving rise to Plaintiff's claims are the same; the validity of the Installment Sale Contracts is at the heart of both the state and federal actions. <u>See</u> <u>Carroll</u>, 2007 WL 1377654, at *5.

Nevertheless, the lack of identity of the parties precludes this Court from dismissing Plaintiff's claims on res judicata grounds. Though Plaintiff concedes that the identity of the parties are the same, neither party recognizes that Plaintiff in the present action was the defendant in the state court proceedings. <u>See id.</u> at *6. As a result, the Court rests its decision on <u>Rooker-Feldman</u> rather than res judicata.

### iii. Motion to Dismiss under 12(b)(6)–Plaintiff Fails to State a Claim Upon Which Relief Can be Granted.

Even if this Court were to conclude that it had subject matter jurisdiction over Plaintiff's claims, Plaintiff has failed to state a plausible claim against VNB, and therefore, Counts I, II, III, IV, and VII must be dismissed pursuant to Rule 12(b)(6). The Court addresses each Count in turn.

### 1. Fraud-Related Counts–UTPCPL Claim (Count II) and Fraud Claim (Count IV)

### a. UTPCPL Claim (Count II)

VNB argues that the UTPCPL claim in Count II should be dismissed because Plaintiff fails to plead fraud with particularity and has not alleged that she justifiably relied on any fraudulent or deceptive conduct of VNB. (MTD at 13–15.) The Court agrees that Plaintiff has failed to state a viable UTPCPL claim against VNB.

The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices" and provides a non-exhaustive list of such forbidden acts. §§ 201-2(4), 201-3; <u>Seldon v. Home Loan Servs., Inc.</u>, 647 F. Supp. 2d 451, 465 (E.D. Pa. 2009) (Yohn, J.). Here, Plaintiff alleges that VNB "engaged in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding under the UTPCPL's "catchall provision," § 201-2(4)(xxi). (Compl. ¶ 69.) Plaintiff alleges that VNB specifically engaged in the following "deceptive conduct" proscribed by the UTPCPL: misrepresentation of services (§ 201-2(4)(ii)); false advertising (§ 201-2(4)(v), (ix)); and false or misleading statements regarding the reasons for or amount of price reductions (§ 201-2(4)(xi)). (Compl. ¶ 69.)

The UTPCPL provides a private right of action for consumers "who purchase[] or lease[] goods or services . . . and thereby suffer[] any ascertainable loss . . ., as a result of the use or employment by any person of a method, act or practice declared unlawful." § 201-9.2(a). As the

"ascertainable loss" must occur "as a result of" unlawful conduct to sustain a claim under the UTPCPL, to state a claim under the UTPCPL, "a plaintiff must show that [s]he justifiably relied on the defendant's wrongful conduct or representation and that [s]he suffered harm as a result of that reliance." Hunt v. U.S. Tobacco Co., 538 F.3d 217, 224 (3d Cir. 2008); see also Dolan v. PHL Variable Ins. Co., No. 3:15-CV-01987, 2017 WL 4812308, at *8 (M.D. Pa. Oct. 25, 2017) (noting that a plaintiff must allege "reliance, causation, and an ascertainable loss" to state any UTPCPL claim); Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009) (Yohn, J.) (quoting Santana Prods, Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d 123, 136 (3d Cir. 2005) ("'[A] plaintiff bringing an action under the UTPCPL must prove . . . reliance and causation with respect to all subsections of the UTPCPL[.]'")).

As an initial matter, VNB argues that because Plaintiff's UTPCPL claims involve a fraud claim, the particularity requirement of Rule 9(b) applies, and so the UTPCPL claim must be dismissed because Plaintiff fails to plead fraud with sufficient particularity. Plaintiff appears to argue that Rule 9(b) does not apply to a claim under the catchall provision of the UTPCPL. (See Resp. at 12–14) (arguing that the Complaint states a UTPCPL claim against VNB and citing the pleading standard of Rule 8(a)(2).)

Contrary to VNB's argument, Plaintiff is not required to plead the elements of common law fraud or do so with particularity under Rule 9(b) to support a UTPCPL claim under the catchall provision. Edwards v. Monumental Life Ins. Co., No. 17-5260, 2017 WL 6327573, at *4 (E.D. Pa. Dec. 11, 2017) (Kearney, J.). Rather, judges in this District, including this Court, have noted that to state a claim under the catch-all provision, a plaintiff may either (1) plead the elements of common law fraud or (2) otherwise allege deceptive conduct, subject to the particularity requirement of Rule 9(b). See Price v. Foremost Indus., Inc., No. 17-00145, 2018 WL 1993378,

at *4 (E.D. Pa. Apr. 26, 2018) (Baylson, J.); see also Linsley v. Am. Honda Motor Co., No. 16-941, 2017 WL 2930962, at *7 (E.D. Pa. July 7, 2017) (Surrick, J.) (quoting Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 498 n.33 (3d Cir. 2013) (noting that "a UTPCPL claim based on deceptive conduct differs from a claim based on fraudulent conduct in that a plaintiff does not need to prove all of the elements of common-law fraud or meet the particularity requirement of Federal Rule of Civil Procedure 9(b)")); Walkup v. Santander Bank, N.A., 147 F. Supp. 3d 349, 360–61 (E.D. Pa. 2015) (Beetlestone, J.) (concluding that based on the 1996 amendments to the UTPCPL, which extended liability to "deceptive conduct," a "[p]laintiff[] need not plead the elements of common law fraud to state a claim under the catch-all provision of the UTPCPL, . . . [and so a plaintiff] also need not plead with the particularity required by Rule 9(b)").

Notwithstanding, Plaintiff's UTPCPL claim in Count II must still be dismissed because Plaintiff fails to allege that VNB engaged in any misrepresentations on which she justifiably relied. As this Court previously discussed in its memorandum granting VNB's Motion to Vacate Entry of Default Judgment, Plaintiff does not allege that VNB, as opposed to JAS, Seltzer, or Iannicelli, made any misrepresentations. (See 2019 WL 199897, at *5–6 (explaining that Count II does not state a UTPCPL claim against VNB).) Count II alleges that "those identified on any sales or financing documents for the Cadillac and/or the Sorento," which includes VNB, misrepresented Plaintiff's qualifications for the loans. (ECF 36 at 5–6); (Compl. ¶ 61.) The Installment Sale Contracts–the "financing documents" on which VNB is identified–only identify VNB as an assignee. (See Sparkes Decl. Exs. A, B.)[17] The Third Circuit has held that "[t]he UTPCPL . . .

---

[17] As the contracts are referenced in the Complaint, the Court may consider them in ruling on the Motion to Dismiss. See Kelly v. Bus. Info. Grp., Inc., No. 15-6668, 2017 WL 2720173, at *2 (E.D. Pa. June 22, 2017) (Strawbridge, M.J.) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("Where a document . . . is incorporated by reference in the complaint and is 'integral to or explicitly relied upon in the complaint,' we may consider the document without converting the motion to dismiss to a summary judgment motion.")); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputably

does not impose liability on assignees" without specific allegations that an assignee committed wrongdoing. Murphy v. Fed. Deposit Ins. Corp., 408 F. App'x 609, 611 (3d Cir. 2010); see also Roche v. Sparkle City Realty, No. 08-2518, 2009 WL 1674417, at *4 (E.D. Pa. June 12, 2009) (Kauffman, J.).

Here, there are no specific allegations that VNB made any misrepresentations in violation of the UTPCPL, let alone any misrepresentations on which Plaintiff justifiably relied. In fact, Plaintiff alleges that she "relied on Dealer, Seltzer and Ianicelli's [sic] misrepresentations as to the approval of financing for the deal[s]" and "as to the requirement for Plaintiff to purchase the Cadillac and Sorento." (Compl. ¶¶ 65–66) (emphasis added.) Plaintiff does not make any allegations as to VNB. Because the Complaint fails to allege that VNB was involved in completing or submitting Plaintiff's Credit Statement or that VNB engaged in any other deceptive conduct on which Plaintiff justifiably relied, the UTPCPL does not impose liability upon VNB. The UTPCPL claim in Count II is dismissed with prejudice.[18]

### b. Fraud Claim (Count IV)

VNB next contends that Count IV must be dismissed because Plaintiff has not pleaded fraud with sufficient particularity, as required by Rule 9(b). Again, Plaintiff appears to contend that Rule 9(b) does not apply. (See Resp. at 12–15) (arguing that the Complaint states viable UTPCPL and fraud claims based on Twombly/Iqbal). The Court agrees with VNB.

To state a claim for common law fraud, a plaintiff must allege: "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance

---

authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]").

[18] As the Court concludes that Plaintiff has failed to allege that she justifiably relied on any misrepresentations or deceptive conduct attributed to Defendant, which is a prerequisite to any UTPCPL claim, the Court need not address Plaintiff's failure to sufficiently plead that Defendant engaged in misrepresentation of services (§ 201-2(4)(ii)); false advertising (§ 201-2(4)(v), (ix)); or false or misleading statements regarding price reductions (§ 201-2(4)(xi)) under the UTPCPL. (Compl. ¶ 69; see Seldon, 647 F. Supp. 2d at 466 (citation omitted).

by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." Hunt, 538 F.2d at 225 n.13; Weissberger v. Myers, 90 A.3d 730, 735 (Pa. Super. Ct. 2014).

Here, Plaintiff alleges that "Defendants made statements to Plaintiff regarding the purchase of the Cadillac and Sorento, including falsification of the [Plaintiff's] Credit Statement." (Compl. ¶ 85.) "[A]s a result of the statements of Defendants, [Plaintiff] justifiably relied on those statements as accurate." (Id. ¶ 86.)

Plaintiff's allegations of fraud are deficient under Rule 9(b). "Where there are multiple defendants involved," as was the case when the Complaint was filed, "the particular fraudulent acts allegedly committed by each defendant must be specified." Bret Binder v. Weststar Mortg., Inc., No. 14-7073, 2016 WL 3762710, at *23 (E.D. Pa. July 13, 2016) (Pratter, J.) (citation and internal quotation marks omitted). Here, Plaintiff fails to allege how the "statements" were fraudulent or which allegedly fraudulent "statements" were made by VNB, the only remaining Defendant. In fact, Plaintiff identifies "Defendants" in Count IV as "sellers of automobiles," suggesting that Plaintiff was referring to JAS, Seltzer, and Iannicelli, not VNB. (See Compl. ¶ 84.) In short, Plaintiffs allegations fail to satisfy the particularity requirement set forth in the Federal Rules. Count IV will be dismissed with prejudice.

### 2. Remaining Claims–ECOA Claim (Count I), TILA Claim (Count III), and CCPA Claim (Count VII)

VNB does not raise any arguments as to Plaintiff's claims under the ECOA, TILA, or CCPA. However, as VNB has moved to dismiss the Complaint in its entirety, the Court may address whether Plaintiff has stated a claim under these statutes. See Bathea v. Nation of Islam, 248 F. App'x 331, 333 (3d Cir. 2007) (citing Oatess v. Sobolevitch, 914 F.2d 428, 430 n.5 (3d Cir. 1990) ("[A] district court may sua sponte dismiss a complaint under Rule 12(b)(6) after service of

process only if the plaintiff is afforded an opportunity to respond. However, although disfavored, a sua sponte dismissal may stand even if the plaintiff is not provided notice and an opportunity to respond where it is clear that the plaintiff cannot prevail and that any amendment would be futile.")). Accordingly, the Court considers whether Plaintiff has stated viable claims under the ECOA, TILA, and CCPA and concludes that Plaintiff's claims must be dismissed.

### a. ECOA Claim (Count I)

Plaintiff contends that Defendants, including VNB, violated the ECOA by: (1) failing to give Plaintiff notice that her Credit Statement was approved by means other than written communication, as required by 15 U.S.C. § 1691(d)(1) and (2); (2) approving Plaintiff's Credit Statement when Defendants knew or had reason to know that Plaintiff did not properly qualify; and (3) failing and/or refusing to maintain records of the Cadillac and Sorento transactions evidencing compliance with the ECOA, as required by § 1691b. (Compl. ¶¶ 42, 46, 48, 62.) In short, Plaintiff's ECOA claim appears to derive from Defendants' alleged failure to provide her with sufficient notification regarding her Credit Statement.

The ECOA requires a "creditor" to provide notice when the creditor takes an "adverse action" against the applicant. § 1691(d)(1); Scott v. Fred Beans Chevrolet of Limerick, Inc., 183 F. Supp. 3d 691, 696 (E.D. Pa. 2016) (Dalzell, J.). The notice must provide the applicant with an explanation for the "adverse action." § 1691(d)(2); Scott, 183 F. Supp. 3d at 696. An "adverse action" is "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." § 1691(d)(6). In sum, to state a claim under the ECOA, a plaintiff must show that (1) Defendant is a "creditor" as defined by the ECOA, (2) Defendant took an "adverse action" against Plaintiff, and

(3) Defendant "provided notice with insufficient explanation as to why it took the adverse action." Scott, 183 F. Supp. 3d at 696.

Here, there is no dispute that VNB, which extended Plaintiff credit to purchase the two cars, qualifies as a "creditor" under the ECOA. See Scott, 183 F. Supp. 3d at 696 (concluding that a car dealer was a creditor where it was the first entity to review the plaintiff's credit application and, after determining that the plaintiff was eligible for financing, extended the plaintiff credit to purchase a car). However, Plaintiff's ECOA claim fails because the Complaint does not allege that VNB took an "adverse action" against Plaintiff. Plaintiff does not allege that VNB denied or revoked her credit, refused to grant Plaintiff credit, or changed the terms of the Installment Sale Contracts. Rather, Plaintiff's ECOA claim is grounded in the theory that VNB extended her credit even though she was not qualified. Moreover, Plaintiff makes no allegations from which this Court may reasonably infer that VNB failed to maintain records demonstrating its compliance with the ECOA, as required by § 1691b. Therefore, Count I shall be dismissed with prejudice.

### b. TILA/CCPA Claim (Counts III and VII)[19]

Next, Plaintiff alleges that Defendants violated the disclosure requirements of the TILA/CCPA. Specifically, Plaintiff alleges that JAS failed to disclose that the sales were conditional on the loans' assignments, which, in turn, affected the annual percentage rates disclosed in the Installment Sale Contracts. (Compl. ¶¶ 77–79.) As a result, Plaintiff alleges that the Installment Sale Contracts filed to accurately disclose the annual percentage rates in violation of the TILA and Regulation Z, 15 U.S.C. § 1638(a)(4)[20] and 12 C.F.R. §§ 226.18(e), 226.22. (Id.

---

[19] The Court addresses Plaintiff's TILA and CCPA claims together because both Counts allege violations of the disclosure requirements in 15 U.S.C. § 1638(a). See also Onafalujo, 2019 WL 1515061, at *3 (noting that the TILA's disclosure requirements are set out at § 1638(a)).

[20] The Complaint incorrectly references § 1638(a)(3), which requires disclosure of the "finance charge," not the "annual percentage rate."

¶¶ 77–79.)[21]  Plaintiff also alleges that Defendants failed to provide her with a written itemization of the amount financed in violation of § 1638(a)(2)(B).  (Id. ¶ 104.)[22]

The TILA requires a lender to include certain disclosures in a consumer credit transaction, including the "finance charge expressed as an annual percentage rate."  15 U.S.C. § 1638(a).  This term "shall be disclosed clearly and conspicuously," and the lender must provide "a brief description [of that term] such as 'the cost of your credit as a yearly rate.'"  15 U.S.C. § 1638(a)(3); 12 C.F.R. § 226.18(e); Onafalujo, 2019 WL 1515061, at *3; Seldon, 647 F. Supp. 2d at 462.

The TILA also requires a creditor to "provide a statement of the consumer's right to obtain, upon a written request, a written itemization of the amount financed."  § 1638(a)(2)(B). This "statement" "shall include spaces for a 'yes' and 'no' indication to be initialed by the consumer to indicate whether the consumer wants a written itemization of the amount financed."  Id.  Upon affirmative indication, a creditor must provide an "itemization of the amount financed," which is defined as "a disclosure of the following items, to the extent applicable":

> (i) the amount that is or will be paid directly to the consumer;
> (ii) the amount that is or will be credited to the to the consumer's account to discharge obligations owed to the creditor;
> (iii) each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person; and
> (iv) the total amount of charges described in . . . subparagraph (A)(iii) [charges to be paid by the consumer before or at the time of the consummation of the transaction and that have been withheld from the proceeds of the credit].

§ 1638(a)(2)(B), (A)(iii).

---

[21] See supra note 14.
[22] The Complaint also alleges that Defendants failed to accurately complete the Credit Statement or show the Credit Statement to Plaintiff for her approval in violation of § 1638(a)(3).  (Compl. ¶ 105.)  As Plaintiff does not allege that VNB was involved in completing the Credit Statement, the Court may infer that this allegation pertains only to former Defendants and is not at issue in the present Motion.  The Court also notes that even if this allegation applied to VNB, Plaintiff does not allege any facts demonstrating that the alleged conduct amounts to a violation of § 1638(a)(3), which requires a creditor to disclose the "finance charge."

Here, the Installment Sale Contracts, which Plaintiff signed, provide all requisite disclosures. As to Plaintiff's claim under § 1638(a)(4), the contracts identify VNB as an assignee in capital, bolded letters. (Sparkes Decl. Exs. A, B.) Further, the contracts state that "[JAS] intends to assign this Contract to Assignee," VNB. (Id.) In large, bolded type, the contracts also disclose that "[t]he Annual Percentage Rate may be negotiable with the Seller [JAS]. The Seller may assign this contract and retain its right to receive a part of the Finance Charge." (Id.) In sum, the contracts undermine Plaintiff's allegation that JAS failed to disclose that the loans were conditional on assignment, rendering the contracts unlawful.

Further belying Plaintiff's claim under § 1638(a)(4), both contracts disclose the "Annual Percentage Rate" for each car–4.99% for the Cadillac and 5.55% for the Sorento–and describe it as "[t]he cost of your credit as a yearly rate." (Id.) The "Annual Percentage Rate" is noted in bold at the top of both contracts, "clearly and conspicuously." As Plaintiff does not provide any additional factual allegations regarding the inaccuracy of the annual percentage rate or any "impropriety surrounding its disclosure," Plaintiff has not stated a plausible claim that VNB failed to disclose the annual percentage rate in violation of the TILA/CCPA. See Seldon, 647 F. Supp. 2d at 463 (dismissing the plaintiffs' TILA claim where the Federal Truth-in-Lending form signed by the plaintiffs listed the annual percentage rate and described it as "[t]he cost of your credit as a yearly rate").

Regarding Plaintiff's claim under § 1638(a)(2)(B), Plaintiff appears to allege that Defendants, including VNB, failed to provide her with a statement of creditor's rights to obtain an "itemization of the amount financed." However, VNB did not need to provide Plaintiff with a statement asking if she wanted an itemization because the Installment Sale Contracts signed by Plaintiff both include an "Itemization of Amount Financed." (See Sparkes Decl. Exs. A, B.) The

"Itemization of Amount Financed" disclosed, in compliance with § 1638(a)(2)(B), the cash price; the cash down payment; the value of the cars traded in for the Cadillac and Sorento; that the amount of the lien would be paid off to VNB; the unpaid cash price balance; the optional debt cancellation; the amounts paid to others, such as public officials, on Plaintiff's behalf, and the amount financed (i.e., the amount of credit extended to Plaintiff). (Id.)

Plaintiff fails to cite, nor is this Court aware of, any precedential judicial decisions suggesting that a lender must provide a statement of creditor's rights to obtain an "itemization of the amount financed" when the lender has already provided such an itemization. Even viewing the factual allegations in the light most favorable to Plaintiff, as the Court must at this stage, the Court cannot reasonably conclude that VNB violated the disclosure requirements of the TILA/CCPA. Accordingly, Counts III and IV will be dismissed with prejudice.

## VI.    Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss will be granted.

An appropriate Order follows.

O:\CIVIL 16\16-5232 Singleton v JAS Automotive\16cv5232 Memo re Motion to Dismiss.docx